UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, an Illinois corporation, et al.<br><br>                            Plaintiffs,<br><br>    v.<br><br>ALAN DEATLEY, a Washington resident,<br><br>                            Defendant. | NO: 13-CV-3029-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 8) and Plaintiffs' Motion for Summary Judgment (ECF No. 12). These matters were submitted for consideration without oral argument. The Court has reviewed the briefing and the record and files herein, and is fully informed.

//

//

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

This is a declaratory judgment action. The plaintiff insurance companies (collectively "Country") seek a determination that they have no duty to defend their insured, Alan DeAtley ("DeAtley"), in two lawsuits currently pending in the State of Colorado (the "damages actions"). Both lawsuits allege that DeAtley sold conservation easement tax credits to investors that were rejected by the Colorado Department of Revenue. The plaintiffs in those actions seek monetary damages in the aggregate amount of $792,000 as compensation for their lost investments.

Plaintiffs now move for summary judgment, arguing that the allegations in the damages actions, when accepted as true, do not trigger coverage under a series of liability insurance policies issued to DeAtley. DeAtley has moved to dismiss the case for failure to state a claim, or, in the alternative, to stay the case pending resolution of criminal charges that have been filed against him in the wake of the Department of Revenue's denial of the tax credits. For the reasons discussed below, the Court will grant Country's motion upon a finding that the injuries alleged in the damages actions are not covered losses.

## FACTS

At the heart of this case are tax credits awarded in exchange for conservation easements. Generally speaking, a conservation easement is an agreement between a private landowner and a government entity stipulating that a parcel of real

property will remain permanently undeveloped.  Like all easements, conservation easements are treated as formal conveyances of real property and run with the land to subsequent purchasers.  In most cases, conservation easements are donated by the landowner as opposed to being sold or condemned via eminent domain.

Due to their restrictive nature and infinite term, conservation easements can significantly diminish the value of real property.  In an effort to neutralize this undesirable effect—and encourage donations—many states allow landowners to "write off" any decrease in value attributable to a conservation easement as a tax loss.  As a further incentive, some states also allow landowners to sell their deductions on the open market as transferrable tax credits.  In those states, tax credits are commonly sold to investors at a discount for tax shelter purposes.

The instant case arises from DeAtley's sale of conservation easement tax credits to investors in the State of Colorado.  For reasons that are unclear from the existing record, many of these claimed tax credits were disallowed by the Colorado Department of Revenue.  According to the allegations in the underlying damages actions, DeAtley sold the tax credits either with the intent to defraud or with knowledge that they were unlikely to be approved.  Many of these allegations rely upon the fact that DeAtley and certain of his business associates were indicted for violations of the Colorado Organized Crime Control Act and other criminal statutes after the tax credits were disallowed.

Upon being sued by two former investors in the damages actions, DeAtley tendered his defense to Country under a series of liability insurance policies which were in effect from 2004 to 2010.  After spending several months investigating the claims, Country tendered a defense under a reservation of rights.  Country now moves for a judgment declaring that it has no duty to defend DeAtley in the damages actions because coverage is unavailable for the claims asserted therein.

DISCUSSION

**A. DeAtley's Motion to Dismiss**

DeAtley has moved to dismiss the Complaint for failure to state a claim. Pursuant to Rule 12(b), a motion to dismiss must be filed "*before* pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b) (emphasis added); *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006) ("A Rule 12(b)(6) motion must be made *before* the responsive pleading.") (emphasis in original) (quotation and citation omitted).  The instant motion is untimely because it was preceded by an answer to the Complaint.  ECF No. 5.  Ordinarily, the Court would construe an untimely motion to dismiss as a motion for judgment on the pleadings or a motion for summary judgment.  *See MacDonald*, 457 F.3d at 1081. Since DeAtley has merely challenged the sufficiency of Country's allegations under Rule 8(a)(2), however, there is no reason to do so here.  Indeed, the fact that

DeAtley answered the Complaint renders his arguments moot. The motion to dismiss is denied.

**B. DeAtley's Motion to Stay**

As an alternative to dismissal, DeAtley asks the Court to stay this case pending resolution of criminal charges stemming from the disallowed tax credits that have been filed against him in Colorado. ECF No. 24 at 9. DeAtley's main contention is that he cannot adequately defend himself in these proceedings without waiving his Fifth Amendment privilege against self-incrimination in the criminal proceedings. For the reasons addressed below, the Court concludes that this case can be decided as a matter of law without the need for DeAtley to testify. Accordingly, DeAtley's request to stay the case is denied.

**C. Plaintiffs' Motion for Summary Judgment**

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

An insurer has two primary duties under a commercial general liability ("CGL") insurance policy: the duty to defend against claims asserting liability on the part of the insured, and the duty to indemnify the insured for liability arising from a covered event. *Weyerhaeuser Co. v. Aetna Cas. and Sur. Co.*, 123 Wash.2d 891, 902 (1994). The duty to defend is broader than the duty to indemnify. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash.2d 751, 760 (2002). Unlike the duty to indemnify, which arises once liability has been conclusively established, the duty to defend can be triggered by a mere allegation of liability. *Id.* Specifically, an insurer's duty to defend arises "when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured

within the policy's coverage. *Id.* (quotation and citation omitted). "Only if the alleged claim is *clearly not covered by the policy* is the insurer relieved of its duty to defend." *Id.* (emphasis added). If an insurer is uncertain whether the allegations against its insured are sufficient to trigger the duty to defend, the preferred practice is to tender a defense under a reservation of rights and to litigate the issue of coverage in a separate declaratory judgment action. *Id.* at 761 (citation omitted).

In the instant motion, Country argues that no coverage is available for the losses alleged in the damages actions. Specifically, Country asserts that the losses at issue in the damages actions are strictly economic in nature and therefore cannot be construed as "bodily injury," "property damage" or "personal and advertising injury" within the meaning of those coverages. ECF No. 12 at 8-12. Given that no coverage is available, Country argues, it has no duty to defend.

Having reviewed the record, the Court concludes that "bodily injury" coverage is unavailable. The broadest definition[1] of that term in the policies is "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." Donnelly Decl., ECF No. 16-3 at 105. The

---

[1] Country has focused its analysis upon the broadest definitions of "bodily injury" "property damage" and "personal and advertising injury" contained in the various policies. As DeAtley has not objected to this approach, the Court will do the same.

allegations in the damages actions do not come close to meeting this definition, and DeAtley has not suggested otherwise.

Nor is there coverage for "personal and advertising injury." The broadest definition of that term provides:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed on or behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Donnelley Decl., ECF No. 16-3, at 107. The damages actions do not allege that DeAtley committed one of the above "offenses." Instead, the damages actions

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 8

allege that DeAtley made fraudulent and/or negligent misrepresentations about the validity of the conservation easement tax credits. DeAtley's contention that coverage is available because he "advertised" the tax credits to investors is unavailing, as his liability does not arise from "us[ing] . . . another's advertising idea" or "infring[ing] upon another's copyright, trade dress or slogan."

Whether coverage is available for "property damage" is a closer question. The broadest definition of that term states, in relevant part:

> "Property damage" means:
>
> a. Physical injury to *tangible property*, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of *tangible property* that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Donnelley Decl., ECF No. 16-3, at 107-08 (emphasis added). As Country correctly notes, resolution of this issue turns on whether the plaintiffs in the damages actions can prove injury to and/or loss of use of "tangible property."

The term "tangible property" is not defined in the policies. Consequently, the term must be "interpreted in accord with the understanding of the average purchaser of insurance [and] be given [its] plain, ordinary and popular meaning." *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co of Omaha*, 126 Wash.2d 50, 77

(1994).  To ascertain the plain, ordinary and popular meaning of an undefined term, Washington courts look to standard English language dictionaries.  *Boeing Co. v. Aetna Cas. and Sur. Co.*, 113 Wash.2d 869, 877 (1990); *Overton v. Consol. Ins. Co.*, 145 Wash.2d 417, 428 (2002).  Webster's Dictionary defines "tangible property" as "property (as real estate) having physical substance apparent to the senses."  *Webster's Third New International Dictionary* (Unabridged) 2237 (1967); *see also Oxford English Dictionary* 610 (Vol. XVII) (2d ed. 1989) (defining "tangible" as something "[t]hat may be discerned or discriminated by the sense of touch; as a *tangible property* or *form*") (emphasis in original); *accord Scottsdale Ins. Co. v. Int'l Protective Agency, Inc.*, 105 Wash. App. 244, 249 (2001) "Tangible property may fairly be defined as property that has physical form and substance, that which may be felt or touched, and is necessarily corporeal.") (internal quotations and modifications omitted) (citing *Blacks Law Dictionary* 1456 (6th ed. 1990)).

The tax credits at issue in the damages actions are not "tangible property" within the meaning of this definition.  Unlike real property or chattels, tax credits do not have a physical form or substance that can be detected by the human senses.  Indeed, tax credits are a prime example of *intangible* property; although they have value, they exist only on paper.  Given that the damages actions arise solely from the Colorado Department of Revenue's denial of DeAtley's conservation easement

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 10

tax credits, the Court concludes that the plaintiffs in those actions cannot establish injury to and/or loss of use of "tangible property" so as to trigger coverage.

This conclusion is further reinforced by the general rule that "loss of [an] investment does not constitute damage to tangible property" under a commercial general liability insurance policy. *Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421, 425 (Minn. 1995). Although Washington courts have not directly addressed this issue, courts in other jurisdictions have consistently ruled that financial losses caused by the sale of fraudulent or misrepresented investments are beyond the scope of standard "property damage" coverage. *See, e.g.*, *Tschimperle*, 529 N.W.2d at 425 (financial losses stemming from fraudulent sale of tax shelter investment do not constitute "loss of use of tangible property"); *Allstate Ins. Co. v. Interbank Fin. Servs.*, 215 Cal. App. 3d 825, 830-31 (Ct. App. 1989) (insurer not required to defend against lawsuits alleging that insured sold fraudulent tax shelter investments); *Keating v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 995 F.2d 154, 156 (9th Cir. 1993) (losses caused by allegedly fraudulent sale of investment bonds not covered under CGL policy); *Giddings v. Indus. Indem. Co.*, 112 Cal. App. 3d 213, 219 (Ct. App. 1980) ("[S]trictly economic losses like lost profits, loss of goodwill, *loss of the anticipated benefit of a bargain*, and *loss of an investment*, do not constitute damage or injury to tangible property covered by a [CGL] policy.") (emphasis added) (citations omitted).

This clear weight of persuasive authority warrants a ruling in Country's favor. In the final analysis, the plaintiffs in the damages actions purchased the conservation easement tax credits from DeAtley as tax shelter investments. Like the investors in the cases cited above, they ran the risk that their investments would decrease in value or be rendered worthless. Unfortunately, that is precisely what occurred when the Colorado Department of Revenue disallowed the tax credits. While the plaintiffs appear to have viable causes of actions against DeAtley, their claims do not arise from injury to "tangible property" under the policies issued by Country. Because no coverage is potentially available, Country has no duty to defend DeAtley in the damages actions. Country's motion for summary judgment is granted.

**IT IS HEREBY ORDERED**:

    1. Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 8) is **DENIED**.

    2. Plaintiffs' Motion for Summary Judgment (ECF No. 12) is **GRANTED**.

The District Court Executive is hereby directed to enter this Order, provide copies to counsel, enter **JUDGMENT** for Plaintiffs, and **CLOSE** the file.

    **DATED** November 21, 2013.



                  THOMAS O. RICE
               United States District Judge